# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

DENNIS JAY REFF,

                    Plaintiff,

       v.                                8:13-CV-1326
                                      (LEK/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

---

STEVEN R. DOLSON, ESQ., for Plaintiff
PETER W. JEWETT, SPECIAL ASS'T U.S. ATTORNEY, for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

    This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, Senior U.S. District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.   PROCEDURAL HISTORY

    On March 29, 2011, plaintiff "protectively filed"[1] applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits. (Administrative Transcript ("T") 13, 58-59, 134-47). Plaintiff alleged disability, beginning on May 1, 2009 involving, *inter alia*, severe flat feet, arthritis, and a heart condition. (T. 134, 141, 157).

---

[1] The term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. If a statement meeting the requirements of the regulations is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

Plaintiff's applications were initially denied on August 2, 2011. (T. 13, 62, 66-68, 72-73). On January 13, 2012, Administrative Law Judge ("ALJ") Roberto Lebron conducted a hearing, at which plaintiff testified. (T. 13, 25-51). The ALJ denied plaintiff's applications in a decision dated June 1, 2012 (T. 13-19), which became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 26, 2013. (T. 1-4).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the Commissioner considers whether the claimant is currently

2

engaged in substantial gainful activity.  If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Commissioner  will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that her impairment prevents her from performing her past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do."  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *Selian*, 708 F.3d at 418 & n.2.

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.* However, this standard is a very deferential standard of review " – even more so than

3

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

As of the date of the administrative hearing in January 2012, plaintiff was 37 years old. (T. 26). He completed ninth grade, but subsequently earned a GED. (T. 28). Plaintiff reported an approximately 15-year employment history, primarily as a farm laborer. (T. 29, 33-35, 155, 158, 165-68, 213, 216). He was married with two children, but was separated and resided with a girlfriend and a number of her children.

(T. 27-28, 156, 187).

Plaintiff suffered from congenital, severe flat feet, which caused him "excruciating" foot and ankle pain and prevented him from sitting, standing, or walking for prolonged periods.  (T. 35-36, 190-92, 232-36).  In early 2011, podiatrist Justin Beabes recommended that plaintiff have surgery to fuse the rear part of both feet.  (T. 233-35).  However, the surgery could not proceed because plaintiff was prescribed a year-long regimen of blood thinners following cardiac catheterization and the placement of two drug-eluting, arterial stents in March 2011.  (T. 219, 227, 232, 251, 279-80).

In connection with the administrative proceedings before the Social Security Administration, three doctors completed residual functional capacity ("RFC") evaluations of the plaintiff–Dr. Beabes, in April 2011, as supplemented at the request of the Commissioner in July 2011 (T. 236-45, 259-63); plaintiff's primary-care physician, Lawrence Koss, M.D., in February 2012 (T. 295-99); and consultative examining general vascular surgeon, Elke Lorensen, M.D., in February 2012 (T. 300-20).  The court will discuss the relevant details of those evaluations below, as necessary to address the issues raised by plaintiff.

## IV.  **ALJ's DECISION**

The ALJ determined that plaintiff met the insured status requirements for DIB through December 31, 2014, and that he had not engaged in substantial gainful activity since May 1, 2009–his alleged onset date.  (T. 15).  The ALJ then found, at step two of the sequential disability analysis, that plaintiff's flat feet, coronary artery

disease, and gastroesophageal reflux disease were "severe" impairments. (T. 15). The ALJ further determined that plaintiff's impairments did not individually, or in combination, meet or equal the criteria of any section of the Listing of Impairments, set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1, including the listing for ischemic heart disease. (T. 16).

The ALJ assessed plaintiff's RFC and concluded that he retained the ability to perform less than a full range of "sedentary work," as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a). (T. 16-17, 18). The ALJ determined that plaintiff could not operate foot controls, and was limited to only occasional crouching, kneeling, and crawling. The ALJ also found that plaintiff must avoid exposure to a variety of extreme environmental conditions and environmental irritants. (T. 16). While the ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ decided, in conclusory fashion, that the plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible, to the extent they were inconsistent with the ALJ's RFC determination. (T. 16-17). In assessing plaintiff's credibility and RFC, the ALJ focused on the three RFC evaluations, giving "great weight" to Dr. Beabes' opinion with respect to plaintiff's limitations on standing, sitting, and walking; "some weight" to Dr. Lorensen's opinion, to the extent it was consistent with the ALJ's RFC findings; and "little weight" to Dr. Koss's restrictive RFC opinions. (T. 17).

At step four, the ALJ found that plaintiff could not perform his past relevant work, predominantly as a laborer, which required "heavy" exertion. (T. 17-18). The

ALJ proceeded to step five and, without consulting a vocational expert ("VE"), found that plaintiff's "additional limitations have little or no effect on the occupational base of unskilled sedentary work." (T. 18). Using the Medical-Vocational Guidelines as a "framework," but without citing any examples of occupations or jobs that plaintiff could do, the ALJ found plaintiff was not disabled. (T. 18).

## V.    ISSUES IN CONTENTION

Plaintiff argues that the ALJ erred in his RFC assessment, by not adequately explaining the "little" weight given to the opinions of treating physician, Dr. Koss, and by improperly weighing the other medical evidence in light of Social Security Ruling 96-9p. Plaintiff argues further that the ALJ failed to apply the recognized standards for assessing the credibility of plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. (Pl.'s Brf., Dkt. No. 12).

For the reasons stated below, this court concludes that the ALJ erred in evaluating the medical evidence and finds that his RFC determination was not sufficiently specific and, particularly with respect to plaintiff's capacity for standing or walking, was not supported by substantial evidence. The ALJ's evaluation of plaintiff's credibility was not adequately explained. The ALJ committed further error in his step-five analysis, which, along with the improper RFC and credibility determinations, tainted the ultimate finding that plaintiff was not disabled. Accordingly, the court recommends a remand for further administrative proceedings to properly assess the medical evidence and plaintiff's credibility in connection with the Commissioner's RFC analysis and determination of plaintiff's ultimate ability to

perform other work.

## VI. RFC/CREDIBILITY/STEP FIVE ANALYSIS

### A. Legal Standards

#### 1. RFC

Residual functional capacity ("RFC") is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how

the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

As noted above, the ALJ determined that plaintiff had the RFC to perform less than a full range of "sedentary" work. The full range of sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about two hours of an eight-hour workday. Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing SSR 83-10, 1983 WL 31251, at *5).

Social Security Ruling 96-9p, discussed further below, explains "the Social Security Administration's policies regarding the impact of [an RFC] assessment for less than a full range of sedentary work on an individual's ability to do other work." 1996 WL 374185, at *1. This ruling provides, *inter alia*:

> When there is a reduction in an individual's exertional or nonexertional capacity so that he or she is unable to perform substantially all of the [unskilled sedentary] occupations administratively noticed in Table No. 1, the individual will be unable to perform the full range of sedentary work: the occupational base will be "eroded" by the additional limitations or restrictions. However, the mere inability to perform substantially all sedentary unskilled occupations does not equate with a finding of disability. There may be a number of occupations from the approximately 200 occupations administratively noticed, and jobs that

exist in significant numbers, that an individual may still be able to perform even with a sedentary occupational base that has been eroded.

1996 WL 374185, at *4.

## 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the reasons that a report of a treating physician is rejected. *Halloran v. Barnhart*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## 3. Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (citation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### 4. Step Five Analysis

At step five of the disability analysis, the burden of proof shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). In the ordinary case, the ALJ carries out this fifth step by applying the applicable Medical-Vocational

Guidelines ("the Grids"). *Id.* (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). But if plaintiff has non-exertional impairments, and if those non-exertional impairments "significantly limit the range of work" permitted by his exertional impairments, the ALJ may be required to consult a vocational expert ("VE"). *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986).

Under Social Security Ruling 96-9p, when "[a]ny one of an individual's exertional capacities is determined to be less than that required to perform a full range of sedentary work[,]" "the medical-vocational rules must be used as a framework for considering the extent of any erosion of the sedentary occupational base." 1996 WL 374185, at *4. When a Social Security claimant's limitations or restrictions have "more than a slight impact on the individual's ability to perform the full range of sedentary work, if the adjudicator finds that the individual is able to do other work, the adjudicator must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." SSR 96-9p, 1996 WL 374185, at *5.

## B. Analysis

Social Security Ruling 96-9p elaborates on the Social Security Administration's policy with regard to evaluating the standing and walking element of "sedentary work":

> The full range of sedentary work requires that an individual be able to stand and walk for a total of approximately 2 hours during an 8-hour workday. If an individual can stand and walk for a total of slightly less than 2 hours per 8-hour workday, this, by itself, would not cause the occupational base to be significantly eroded. Conversely, a limitation to standing and walking for a total of only a few minutes during the workday would erode the unskilled

sedentary occupational base significantly. For individuals able to stand and walk in between the slightly less than 2 hours and only a few minutes, it may be appropriate to consult a vocational resource.

1996 WL 374185, at *6. The ALJ found that plaintiff could perform less than a full range of sedentary work, but did not specify how long he thought plaintiff could stand or walk during an eight-hour workday. (T. 16-17, 18).

The ALJ gave "great weight" to the opinion of plaintiff's treating podiatrist, Justin Beabes that plaintiff could stand and/or walk for "less than 2 hours per day and has no limitations with sitting." (T. 17, 242). Dr. Beabes did not elaborate on just how much less than two hours per day plaintiff could stand and/or walk.[2] Although the Social Security Administration asked Dr. Beabes to clarify other aspects of his RFC evaluation, he was not asked to provide a more specific estimate of plaintiff's ability to stand or walk during a workday. (T. 259-62). The treating podiatrist did note that plaintiff experienced constant ankle and foot pain on standing and walking and that plaintiff stated that "he is not able to handle the pain anymore." (T. 235, 236, 239). Dr. Beabes's physical examinations of the plaintiff revealed that "his arch height is completely collapsed[,]" his gait is severely pronated, and his range of motion in the ankle and adjoining joints "are all limited." (T. 232, 234-35).

The ALJ gave some weight to the opinion of consultative examiner, Dr. Lorensen that plaintiff had "mild to moderate restrictions for walking, climbing stairs,

---

[2] The RFC evaluation form completed by Dr. Beabes asked about the patient's ability to "Stand and/or Walk" "per day" and offered only two alternatives to check off on the form–"up to 6 hours per day" and "less than 2 hours per day." (T. 242).

and kneeling but . . . can sit for 8 hours at one time without interruption." (T. 17).[3] The ALJ did not acknowledge that, in other contemporaneous reports or RFC evaluations, Dr. Lorensen also made the more specific findings that plaintiff could only stand for 20 minutes and sit for 30 minutes without interruption, and could only stand or walk for one hour each during an eight-hour workday. (T. 305, 316). The ALJ stated that Dr. Lorensen reported that the plaintiff "ambulates without assistance but with a slightly abnormal gain and . . . can walk on his heels but not his toes." (T. 17). The ALJ did not note that Dr. Lorensen also reported that plaintiff experienced "stabbing" pain in his ankles and feet "brought on by standing and walking" (T. 311) and that plaintiff could "never" climb stairs or ladders, balance, stoop, kneel, crouch, or crawl" (T. 307).[4]

The ALJ gave "little" weight to the opinion of plaintiff's primary care physician, and essentially adopted the less restrictive RFC evaluation of plaintiff's "treating specialist," Dr. Beabes. (T. 17). Dr. Koss opined, *inter alia*, that plaintiff could only stand five to ten minutes before needing to sit down and could only stand or walk for less than ten to fifteen minutes in an eight-hour workday. (T. 296-97). Dr.

---

[3] The ALJ credited Dr. Lorensen's opinion that plaintiff could never operate foot controls, which limitation the ALJ included in his RFC finding. (T. 16, 17, 306, 317).

[4] The ALJ did not address some significant inconsistencies between Dr. Lorensen's "orthopedic" report and associated RFC evaluation and her "internal medicine" report/evaluation. As noted in the text, Dr. Lorensen made differing statements regarding plaintiff's ability to climb stairs and kneel. (T. 302, 307). In one report, Dr. Lorensen stated that plaintiff had mild to moderate limitations on walking and standing (T. 314); in the other she did not mention a limitation on standing (T. 302). Dr. Lorensen stated that plaintiff "is able to walk on his heels with difficulty" in one report (T. 301), but said, in the other report that plaintiff "could walk on his heels with minimal difficulty" (T. 312). There is no indication in the record that the ALJ sought any clarification of Dr. Lorensen's reports.

Koss also concluded that plaintiff could only sit for four hours during a workday; would need to shift positions at will from sitting, standing, or walking; and would miss more than four days of work per month because of his impairments or treatment. (T. 297-98).

Based on this record, but without further elaboration or discussion, the ALJ apparently concluded that plaintiff's limitations, including limitations on his ability to stand and walk, "have little or no effect on the occupational base of unskilled sedentary work." (T. 17, 18). An ALJ's failure to articulate a specific function-by-function RFC is not per se error. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("remand is not necessary merely because an explicit function-by-function analysis was not performed"). However, the ALJ's failure to specify how long he thought plaintiff could stand and/or walk during an eight hour days provides an inadequate basis for judicial review of whether the RFC determination was supported by substantial evidence and whether the ALJ erred at step five, *e.g.*, by not consulting a vocational expert. *See Cichocki*, 729 F.3d at 177 ("[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review). *See also Beylo v. Astrue*, No. 10-CV-354 (WGY), 2012 WL 4491043, at *7-8 (N.D.N.Y. Sept. 28, 2012) (the ALJ erred by not specifying what range of unskilled sedentary work plaintiff could perform and not discussing how long plaintiff could sit, stand, or walk); *Burton v. Colvin*, No. 6:12-CV-6347, 2014 WL 2452952, at *10 (W.D.N.Y. June 2, 2014) (the ALJ erred by

15

failing specifically to determine plaintiff's ability to sit, stand, walk, lift, carry, and bend in the context of an eight-hour workday).

It is unclear from the ALJ's opinion whether he interpreted Dr. Beabes's RFC evaluation to mean that plaintiff could stand/walk for **only slightly** less than two hours in a workday, which would support a finding that plaintiff's occupational base for unskilled sedentary work was not significantly eroded. If so, the ALJ needed to explicitly articulate his interpretation of this medical opinion and marshal any evidence supporting that gloss on Dr. Beabes's explicit finding that plaintiff could "stand and/or walk for less than two hours per day." By failing to do that, the ALJ foreclosed "meaningful review" of his RFC assessment. *Cichocki*, 729 F.3d at 177. *See also Gray v. Chater*, 903 F. Supp. 293, 300 (N.D.N.Y. 1995) (substantial evidence did not support the ALJ's finding that plaintiff could perform the full range of sedentary work where there was no medical opinion evidence that the plaintiff could stand for two hours a day, as might be required in a sedentary job; the ALJ resorted to distinguishing away the contrary medical opinion evidence which provided, at best, a lack of definitive evidence that the plaintiff could perform sedentary work); *Beylo v. Astrue*, 2012 WL 4491043, at *7-8, 10 (remanding for a proper determination of whether plaintiff had the capacity to sit, stand, or walk consistent with the full range of sedentary work, given the absence of any medical opinion evidence indicating that plaintiff had the capacity to stand for two hours and sit for more than six hours).

As noted above, the other medical opinion evidence in this case indicated that plaintiff could only stand and/or walk for an hour or less during an eight-hour

workday. The ALJ explicitly rejected the more restrictive RFC of treating physician, Dr. Koss, that plaintiff could only stand or walk for less than ten to fifteen minutes during a workday, although he failed to articulate his reasoning in doing so.[5] However, it is unclear whether the ALJ accepted or rejected Dr. Lorensen's opinion that plaintiff could only walk and stand for one hour during a workday, because he did not mention that opinion. If the ALJ accepted Dr. Lorensen's view, that would **not** provide substantial evidence to support the ALJ's implicit conclusion that the limitations on plaintiff's ability to stand and/or walk did not significantly erode the occupational base of unskilled sedentary work. *See Spain v. Astrue*, No. 07-CV-1776, 2009 WL 4110294, at *6 (E.D.N.Y. Nov. 25, 2009) (plaintiff's ability to walk or stand for only one to two hours a day significantly erodes her ability to perform the full range of sedentary work; one hour is not the same as "approximately two hours," as required by SSR 96-9p to support a full range of sedentary work).[6] If the ALJ credited

---

[5] Defense counsel offered additional reasons for rejecting the opinion of this treating physician that the ALJ did not offer, including inconsistencies between Dr. Koss's treatment notes and his opinons. (Def.'s Brf. at 6-7, Dkt. No. 14). If the District Court adopts this court's recommendation to remand the case, the Commissioner should better explain the reasons why the opinion of any treating physician should not be given controlling weight.

[6] Although the ALJ did not take this position, defense counsel suggests that Dr. Lorensen's opinion that plaintiff "could stand and walk for one hour *each* per day" should be construed to indicate that he could stand or walk for a total of two hours per day. The Second Circuit has rejected such an expansive interpretation of a similar medical source statement in *Vargas v. Sullivan*, 898 F.2d 293, 295 (2d Cir. 1990). In completing the RFC assessment portion of a medical source report, the treating doctor in *Vargas* stated that the plaintiff "could sit up to two hours at a time and a total of six hours in an eight-hour day. She could stand up to one hour at a time and a total of four hours in an eight-hour workday. She could walk up to thirty minutes at a time and a total of two hours in an eight-hour workday." *Id.* The *Vargas* court concluded that "the [ALJ] erroneously concluded that Mrs. Vargas could 'stand and walk at least six hours in an eight-hour day. . .'" by mis-interpreting the doctors report to mean that, "after Mrs. Vargas completed the four hours of standing permitted by [her treating doctor], she could undertake an additional two hours of walking. . . . This was a distortion of the attending physician's report. To

17

Dr. Lorensen's opinion that plaintiff could walk and stand for up to one hour per day, the ALJ could not "satisfy his burden at step five by exclusively applying " the Grids, but would be required to enlist the aid of a vocational expert, pursuant to SSR 96-9p, or, at a minimum, apply the Grids as a "framework" for his analysis. *Id.*[7]

In fact, the ALJ stated that he was applying the Grids as a "framework" during his step five analysis, but he did not follow the standards of SSR 96-9p in his analysis. In particular, the ALJ "failed to cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides or in several regions of the country." SSR 96–9p, 1996 WL

walk, a person must stand; the two hours of walking must be included in the four hours of standing, not added to it." *Id. See also Santiago v. Sullivan*, No. 90 Civ. 7172, 1991 WL 150197, at *6 (S.D.N.Y. Aug. 1, 1991) (A doctor reported that plaintiff "could stand for a total of two hours in an eight-hour day and walk for a total of one to two hours"; under *Vargas*, plaintiff's total time on his feet is not more than two hours, rather than four hours); *Hiller v. Astrue*, 11-CV-4131, 2012 WL 4511374, at *2 (E.D.N.Y. Sept. 28, 2012) (applying *Vargas*).

[7] Defense counsel suggests that the admissions of the plaintiff during the administrative hearing would support a finding that the plaintiff had a sufficient capacity for standing and walking to perform sedentary work. (Def.'s Brf. at 6-7). Plaintiff testified that he might be able to stand for 15 minutes before sitting down (T. 41), and that he could possibly alternate walking for five minutes and resting for ten minutes over half a day (T. 46). The plaintiff summed up this testimony by stating he could walk or stand for "maybe an hour" during an average eight-hour workday. (T. 46). Defense counsel somehow concludes that plaintiff admitted that he could stand and walk at least 80 minutes a day if allowed to alternate between sitting and standing. (Def.'s Brf. at 7). The ALJ did not advance any such argument. Even if the ALJ had taken the position that plaintiff could meet the requirements for sedentary work by being allowed to alternate between sitting and standing or walking, he would have needed to specify the nature of those restrictions. Moreover, a finding that the plaintiff needed to alternate between sitting and standing or walking with any frequency would likely erode the occupational base of unskilled sedentary work and require the testimony of a VE or the application of the Grids as a "framework." See SSR 96-9p, 1996 WL 374185, at *7 ("[t]he RFC assessment must be specific as to the frequency of the individual's need to alternate sitting and standing. It may be especially useful in these situations to consult a vocational resource . . . .); *Overbaugh v. Astrue*, No. 6:07-CV-261 (NAM/DEP), 2010 WL 1171203, at *9 (N.D.N.Y. Mar. 22, 2010) (the ALJ erred when he failed to specify the frequency of plaintiff's need to alternate sitting and standing; upon remand, it may be appropriate to employ the services of a vocational expert).

374185, at *5. Accordingly, the ALJ "did not apply a framework approach and has not met his burden" of proof at step five of the sequential disability analysis. *Spain v. Astrue*, 2009 WL 4110294, at *7.

In sum, this court concludes that the ALJ erred in his evaluation of the medical evidence, and that his RFC determination, particularly with respect to plaintiff's ability to stand and walk during a workday, was not adequately articulated or supported by the medical evidence. The court further finds that the ALJ committed further error, in his step five analysis, by not properly applying the Grids as a framework, or by not consulting with a VE.

Based on these conclusions, the court need not fully review the ALJ's analysis regarding plaintiff's credibility. However, while the ALJ articulated the proper two-step standard for the credibility analysis, he did not discuss the appropriate symptom-related factors, but, instead, made an inadequate, conclusory finding regarding plaintiff's credibility. On remand, the Commissioner should properly evaluate plaintiff's credibility by considering and referencing the symptom-related factors set forth in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3).

On remand, the Commissioner should articulate an appropriate function-by-function RFC, at least with respect to the critical factors such as plaintiff's ability to sit, stand, and walk during a workday. The Commissioner should consider re-contacting medical sources as necessary to clarify their opinions regarding plaintiff's ability to stand and/or walk during a workday. *See, e.g., Jimenez v. Astrue*, No. 12 Civ. 3477(GWG), 2013 WL 4400533, at *11 (S.D.N.Y. Aug. 14, 2013) ("[a]lthough

the Social Security Administration recently changed its regulations to reduce the situations in which an ALJ must re-contact medical providers, the regulations still contemplate the ALJ re-contacting treating physicians when 'the additional information needed is directly related to that source's medical opinion'") (citing 77 Fed. Reg. at 10,652);[8] *Rolon v. Commissioner of Social Sec.*, 994 F. Supp. 2d 496, 505 (S.D.N.Y. 2014) ("[e]ven under the current amended regulations, which give an ALJ more discretion to 'determine the best way to resolve the inconsistency or insufficiency' based on the facts of the case, the first option is still to recontact the treating physician") (citing 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (2013)). In assessing plaintiff's RFC, the Commissioner should, of course, properly weigh the medical opinion and other evidence, explaining, in particular, the reason for not giving controlling weight to the opinion of any treating physician.

Finally, to the extent the Commissioner determines, on remand, that the plaintiff's limitations, *e.g.*, on his ability to stand or walk, significantly impair his ability to perform the full range of sedentary work, the Commissioner should consult a VE or, at a minimum, properly apply the Grids as a "framework." As noted above, the framework analysis would generally require the Commissioner to cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual resides .

---

[8] Effective March 26, 2012, the Commissioner amended the regulations to remove former paragraphs 20 C.F.R. §§ 404.1512(e) and 416.912(e)(e) and the duty it imposed on ALJs to re-contact a disability claimant's treating physician under certain circumstances.

## VII.  NATURE OF REMAND

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).  This court cannot conclude that "substantial evidence on the record as a whole indicates that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

**WHEREFORE,** based on the findings in the above Report, it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Report.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**Dated**:  February 17, 2015

Hon. Andrew T. Baxter
U.S.  Magistrate Judge